IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KENNETH W. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-CV-165 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Plaintiff Kenneth Campbell brought this action to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I. PROCEDURAL HISTORY

Mr. Campbell filed his application for Disability Insurance Benefits on June 3, 2011, alleging a disability onset date of May 11, 2005. (Tr. at 169-70.)[1] After Mr. Campbell's application was denied initially, (Tr. at 60-70), and upon reconsideration, (Tr. at 71-82), he requested a hearing de novo before an Administrative Law Judge, ("ALJ"). (Tr. at 27-28.) After a hearing, the ALJ determined that Mr. Campbell was not disabled within the meaning of the Act. (Tr. at 26.) On December 21, 2014, the Appeals Council

---

[1] Transcript citations refer to the Sealed Administrative Record. [Doc. 4.]

denied Mr. Campbell's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-4.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). "[T]he scope of [the court's] review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). A reviewing court must uphold the factual findings of the ALJ underlying the denial of benefits if they are "supported by substantial evidence" and "were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations omitted.)

The issue "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In making this determination, the court must consider whether the ALJ analyzed all of the relevant evidence and sufficiently explained the findings and rationale for crediting or discrediting probative evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997); *Woody v. Barnhart*, No. 6:05 CV 00045, 2006 WL 2349939, at *2 (W.D. Va. Aug. 14, 2006) (Recommendation of then-Magistrate Judge Urbanski), *adopted in full*, December 15, 2006 (Hon. Norman K. Moon.)

2

## III. THE ALJ'S DECISION

The ALJ here followed the well-established five-step process to evaluate disability claims. *See Hancock*, 667 F.3d at 472.[2] The ALJ found at step one that Mr. Campbell had not engaged in substantial gainful activity since his alleged onset date. He therefore met his burden at this first step of the sequential evaluation process. At step two, the ALJ determined that Mr. Campbell suffered from several severe impairments: degenerative disc disease of the cervical spine, arthritis, hypertension, chronic obstructive pulmonary disease, and carpal tunnel syndrome. (Tr. at 18.) The ALJ then found at step three that these impairments did not meet or equal a disability listing. Accordingly, he assessed Mr. Campbell's residual functional capacity ("RFC") and determined that Mr. Campbell could perform light work with additional manipulative and environmental limitations. (Tr. at 20.) At step four, the ALJ found that Mr. Campbell's past relevant work exceeded his RFC. (Tr. at 24.)

At step five, the ALJ first evaluated whether the Medical–Vocational Guidelines – the "grids" – governed.[3] The ALJ found that Mr. Campbell fell into the "closely approaching advanced age" category, and that he had a high school education and could communicate in English. (Tr. at 25.) Under these facts, and regardless of whether his skills were transferable, the ALJ noted that the grids would dictate a finding of "not disabled" if Mr. Campbell were able to do the full range of light work. Because Mr.

---

[2] Under this five-step process, "the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Id.*

[3] The grids are contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2.

Campbell had limitations on his ability to do light work, the ALJ used the grids as a framework for decision. (Tr. at 25.) He then consulted a vocational expert, who testified that an individual with Mr. Campbell's age, education, work experience, and RFC remained capable of performing other jobs that exist in significant numbers in the national economy. (Tr. at 25-26.) Based on this testimony, the ALJ concluded that Mr. Campbell was not disabled under the Act. (Tr. at 26.)

IV. ISSUE

Mr. Campbell now argues that the ALJ erred at step five by failing to consider his borderline age situation. Specifically, he contends that because he was very close to the next age group of "advanced age," the ALJ was required to evaluate whether it was more appropriate to place Mr. Campbell in the "advanced age" category of the grids, and that the ALJ's failure to do so requires remand for reconsideration. The Commissioner contends that the ALJ was not required to explicitly reference the borderline age issue or to explain the analysis in his opinion.

V. ANALYSIS

At step five of the sequential analysis, the Commissioner, rather than the plaintiff, carries the "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community." *Hines*, 453 F.3d at 567; 20 C.F.R. § 404.1520(a)(4)(v). When a claimant's qualifications correspond to the job requirements identified by a particular rule within the grids, the grids direct a conclusion as to whether work exists that the claimant could perform. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983); *see also Hammond v. Heckler*, 765 F.2d 424, 425-26 (4th Cir. 1985). However, if a

4

claimant's RFC includes limitations beyond those contemplated in the grids, the grids are not dispositive.  Although the grids still provide a framework for decisions in such cases, *Wilson v. Heckler*, 743 F.2d 218, 222 (4th Cir. 1984), testimony from a vocational expert is required for the Commissioner to meet the step five evidentiary burden.  *McLain v. Schweiker*, 715 F.2d 866, 870 n.1 (4th Cir. 1983).

The grids consist of a matrix of four factors identified by Congress - physical ability, age, education, and work experience - and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.  *Heckler v. Campbell,* 461 U.S. at 461-62.  As to age, there are four categories:  (1) closely approaching retirement age (60–64); (2) advanced age (55–59); (3) closely approaching advanced age (50–54); and (4) younger individual (18–49).  20 C.F.R. § 404.1563.  Under the regulations, age is considered as a factor affecting the ability to make a vocational adjustment to other work in the economy; for claimants "closely approaching advanced age" (age 50-54), age, along with a severe impairment(s) and limited work experience, "may seriously affect [the] ability to adjust" to other work, and for claimants of "advanced age" (55 and over), age "significantly affects a person's ability to adjust to other work."  20 CFR § 404.1563(d)-(e).

The regulations specifically require that factfinders must "not apply the age categories mechanically in a borderline situation."  20 C.F.R. § 404.1563(b).  Instead, if a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the ALJ] will consider whether to use the older age category after

5

evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R. § 404.1563(b); *see generally*, *Hofler v. Astrue*, No. 4:11cv172, 2013 WL 442118, at *6 (E.D. Va. Jan. 9, 2013) (Recommendation of Magistrate Judge Miller), *adopted in full*, 2013 WL 442880 (E.D. Va. Feb 5, 2013).

Here, Mr. Campbell was 54 years old as of December 31, 2011, the date he was last insured. (Tr. at 18, 25.) He turned 55 on June 20, 2012, not quite six months later.[4] Despite this, the ALJ did not evaluate whether it was appropriate to apply the "advanced age" of 55-to-59. Nor did the ALJ determine whether using that older age category of 55-to-59 would result in a determination under the grids that Mr. Campbell was disabled. For purposes of this motion, it appears undisputed that the grids would require a finding of Disabled under the grids if Mr. Campbell was considered to be of "advanced age" and if the ALJ found his skills were not transferrable.[5] Accordingly, the sole remaining issue is whether the ALJ's failure to explicitly evaluate the applicability of the "advanced age" category constituted reversible error.

Internal guidance within the Social Security Administration is inconsistent and ambiguous on this point. *See Ash v. Colvin*, No. 2:13-CV-47, 2014 WL 1806771, at *7

---

[4] Six months arguably falls within the borderline range contemplated by the regulations. *Amick v. Colvin*, No. 5:12-0922, 2013 WL 4046349, at *4 n.1 (S.D. W. Va. Aug. 8, 2013) (collecting cases); *France v. Apfel*, 87 F. Supp. 2d 484, 491-492 (D. Md. 2000); *see also* POMS, DI 25015.005 Age as a Vocational Factor, http://policy.ssa.gov/poms.nsf/lnx/0425015005 (last visited Dec. 9, 2015).

[5] Mr. Campbell contends that he would be found disabled under the grids if he was considered to be of "advanced age" and if his skills were not transferable. (*See* Pl's Br. [Doc 8] at 9-10 and n.7.) The Commissioner did not address this contention, and the Court assumes without deciding that this is so. The ALJ did not discuss whether Mr. Campbell's skills were transferable, since that finding was not determinative under the "closely approaching advanced age" grid.

(N.D. W. Va. May 7, 2014)(adopting Recommendation); *Hofler*, 2013 WL 442118, at *7-8. However, significant authority, including a plain reading of the regulations themselves, supports a requirement for explicit consideration of borderline age situations. As noted *supra*, ALJs are required to apply the age categories in a non-mechanical manner, *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983), as well as to "consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case," 20 C.F.R. § 404.1563(b). A failure to explain this consideration in a case where it potentially applies and is potentially determinative in favor of the claimant makes the ALJ's decision virtually unreviewable. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting in a different context that a failure to assess a disputed issue "frustrate[s] meaningful review.") This is particularly problematic because the burden of proof is on the Commissioner at step five.

Significant case law supports Mr. Campbell's position that the ALJ is required to explain when the decision is made not to "round up" in a borderline age situation. The Eighth and Tenth Circuits have found insufficient evidence exists to support the ALJ's opinion where the ALJ failed to make express findings about the age category determination in borderline cases. *Phillips v. Astrue*, 671 F.3d 699, 707 (8th Cir. 2012); *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998).[6] While there is no Fourth Circuit case on point, many district courts in the Fourth Circuit have required the ALJ to provide some analysis and make express findings in borderline age situations. *See Hofler*, 2013

---

[6] The Third Circuit has agreed in an unpublished opinion. *Lucas v. Barnhart*, 184 F. App'x 204, 208 (3rd Cir. 2006).

WL 442118, at *8 (collecting cases). The Court finds the reasoning of these cases persuasive,[7] and agrees that in borderline age cases the ALJ should discuss the potential applicability of the higher age category.

The Commissioner acknowledges the above-cited cases, but contends that the Fourth Circuit is "unlikely to impose" a requirement that the borderline age analysis be explicit, citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). In that case, the regulations required that the Appeals Council consider new evidence, but did not require the Council to make explicit findings about the evidence when denying review. *Id.* However, the *Meyer* decision also noted that

> [t]he Appeals Council's *denial of a request for review* differs sharply from an ALJ's *decision*. Social Security regulations do explicitly require the ALJ to issue *decisions* supported by "findings of fact and the reasons for the decision." In contrast, the regulations do not require the Appeals Council to articulate its rationale for denying a request for review.

*Id.* at 705-06 (citations omitted). In light of this distinction, the Commissioner's reliance on *Meyer* is misplaced.

The Commissioner also argues that any error was harmless because there is nothing to indicate Mr. Campbell has vocational adversities[8] that would require use of the older age category. (Def.'s Br. [Doc. 12] at 9.) As noted by a sister court, "a review of the case law indicates that the extent to which the ALJ is required to provide analysis and

---

[7] While there is some authority to the contrary, s*ee Caudill v. Commissioner*, 424 F. App'x, 510, 517 (6th Cir. 2011), *Lockwood v. Commissioner*, 616 F.3d 1068, 1071-72 (9th Cir. 2010), *Miller v. Commissioner*, 241 F. App'x 631, 635 (11th Cir. 2007), those cases are either distinguishable or not persuasive.

[8] In the borderline age context, vocational adversities are factors, other than age or other factors already accounted for under the grids, which render a claimant "relatively less able to make an adjustment to other work than an individual in the next higher age category who is nonetheless conclusively presumed disabled under the grids." *Ash*, 2014 WL 1806771, at *7.

8

make express findings in borderline age situations often depends on whether additional vocational adversities exist in the record." *Ash*, 2014 WL 1806771, at \*7; *cf. Mascio*, 780 F.3d at 639 (noting in a different context that a failure to explain credibility in one part of a decision is harmless if it is properly analyzed elsewhere). While the Court agrees with the *Ash* court that remand is not required if "there is clearly no evidence in the record suggesting the presence of any additional vocational adversities," *Ash* at \*7, that is not the case here. Just as in *Ash*, the claimant here has exertional impairments which infringe upon his occupational base, as determined by the ALJ in deciding the plaintiff's RFC and as testified to by the vocational expert. (*See* Tr. at 20.) The Court is not in a position to determine this question on the cold record. Remand is more appropriate so the ALJ can evaluate the question in the first instance.

In a related argument, the Commissioner contends that the ALJ fully took into account any potential "additional vocational adversities" because those "adversities" were reflected in Mr. Campbell's RFC, and the VE testified that there were jobs available for someone with Mr. Campbell's RFC. (Def.'s Br. at 11.) This puts the cart before the horse; if Mr. Campbell should have been given the benefit of the "advanced age" category and his skills were not transferable, then the grids compel a finding of Disabled and the testimony of a VE is irrelevant.

Because Mr. Campbell was in a borderline age situation and the ALJ failed to indicate that he had considered whether the higher age category should apply and failed to provide any explanation for not applying the higher age category, remand is required. The Court expresses no opinion on what the result of such reconsideration should be.

9

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for proceedings consistent with this Order. To this extent, the defendant's Motion for Judgment on the Pleadings, [Doc. 11], is DENIED, and the plaintiff's Motion for Judgment on the Pleadings, [Doc. 7], is GRANTED. However, to the extent that the plaintiff's motion seeks an immediate award of benefits, it is DENIED.

This the 9th day of December, 2015.

UNITED STATES DISTRICT JUDGE